# IOWA-PHOENIX CORPORATION *v.*
# DEPARTMENT OF REVENUE

Bernard F. Bednarz, Salem, represented plaintiff.

Alfred B. Thomas, Assistant Attorney General, Salem, represented defendant.

Decision for defendant rendered May 11, 1976.

CARLISLE B. ROBERTS, Judge.

Plaintiff appeals from the Department of Revenue's Order No. VL 76-19, issued on January 22, 1976, which found that the value of plaintiff's motel on January 1, 1975, was $1,000,000. The plaintiff asserts that the true cash value should be $419,419.

The subject property is the Holiday Inn motel complex located in Salem, Oregon, on the corner of South Commercial and Mission Streets. The site contains 84,942 square feet. It is improved with two 55-unit motel buildings (totaling 110 units), and a third building containing a restaurant, bar, meeting rooms and other support facilities.

Plaintiff's sole witness was Mr. Thomas O. Mix, the innkeeper of the motel since July 1974. He did not testify as an expert witness and was not so qualified, but was presented to relate the income and expenses resulting from operation of the inn in 1973, 1974 and 1975. By substituting these figures for those used in the income approach submitted by the Marion County Assessor in an earlier appraisal, plaintiff apparently believed it could prove its claimed value of $419,419. The income figures (before taxes and depreciation), capitalized by the high and low ranges of capitalization rates, were as follows:

| Year | Net Income | Capitalized at 11.1%* | Capitalized at 15.1%* |
|------|------------|------------------------|------------------------|
| 1973 | $125,687 | $1,132,315 | $832,364 |
| 1974 | 25,633 | 230,928 | 169,755 |
| 1975 | 111,514 | 1,004,630 | 738,503 |

* Includes a 3.1 percent assessment rate.

■■ In the court's view, plaintiff has failed to present a prima facie case as to the value of the subject property on the assessment date. Mr. Mix is

neither an owner of this facility nor an appraiser, and cannot offer an opinion of value upon which this court can rely. He can certainly perform the mechanical operations of gathering the income figures and capitalizing them, as was done by the Marion County Assessor's office in prior years. However, the appraisal process requires more than the ability to plug numbers into a predetermined formula. "To make an appraisal is to solve a problem. The *solution requires interpretation,* in terms of money, of the influences of economic, sociological, physical, and political forces on a specific real property." (Emphasis supplied.) American Institute of Real Estate Appraisers, *The Appraisal of Real Estate* 45 (5th ed 1967). *See also Encyclopedia of Real Estate Appraising* ch 7 (Friedman ed, rev & enlarged ed 1968).

Each assessment year is separate and must stand on its own. The method the Marion County Assessor's office used in a prior year to appraise a particular property thereby acquires no official sanction.

The county assessor's duty to maintain an up-to-date assessment roll is a very demanding task, bordering on the impossible. This leads to mass appraisal work, where partially trained individuals, under supervision, are often asked to do no more than plug numbers into a formula to arrive at an estimate of value. Although often acceptable, such techniques can result in values that are incorrect if special circumstances are involved. An example of such circumstances, which an untrained individual would not recognize, is applying an income approach to the income from an atypical year. The income approach depends upon analysis of *future* income and the income from an atypical year will not be representative of expected future trends.

█ This has occurred in the instant case. The $419,419 value asserted by plaintiff rests heavily on 1974's capitalized income. It is noted that 1974's net income figure of $25,633 is substantially lower than either 1973's figure of $125,687 or 1975's figure, $111,514. Testimony at trial showed that this lower income for 1974 was a result of two factors. The gasoline shortage occurring during the end of 1973 and early in 1974 had an adverse effect on the occupancy rate of the facility. In addition, approximately 40 motel units were out of service shortly after Labor Day and into the early part of 1975 because of reinforcement work designed to prevent slippage of one of the buildings. It was evident that 1974 was not a typical year. This conclusion is compelled by a comparison of the net income of 1974 with that of 1973 and 1975. Capitalizing 1974's net income cannot produce a reliable indicator of value of the subject property as of January 1, 1975.

On the other hand, the defendant's witness, Mr. Earl M. Nichols, who has 18 years of experience as an appraiser for Marion County and is the Commercial Appraisal Supervisor in the office of the Marion County Assessor, presented a detailed, professional appraisal of subject property, employing all three of the accepted approaches to value. It was shown that he affirmatively recognized and adjusted for the problems relating to the energy crisis and the building reinforcement work. His conclusion was that the subject real estate had a total true cash value on the assessment day of $1,050,000, with $297,300 allocated to land and $752,700 to improvements.

His cost approach to value as of January 1, 1975, separately analyzed the land and the improvements. Three sales of provably similar pieces of commercial real estate, made in August 1972, July 1972, and August 1974, adjusted for size and time, indicated val-

ues ranging from $3.45 to $3.87 a square foot. Using a value of $3.50 per square foot and multiplying it by 84,942 square feet, a value for the land of $297,300 was calculated. The depreciated cost of the buildings, using two cost factor sources, was $912,000. The total cost value was therefore $1,209,300.

For Mr. Nichols' income approach, plaintiff's operating statements for 1973, 1974 and 1975 were made available. (He did not use the 1975 figures.) He determined that 1973 was more useful to show a stabilized income, for the same reasons described above. He estimated annual net income for the motel of $130,618, plus the estimated income for the restaurant and bar, based on rentals, of $14,194, for a total yearly income of $144,812. Attributing $10,000 of this income to the $50,000 of personal property in the motel, an annualized income of $134,812 was calculated. This was capitalized at 12.7 percent (which includes a 3.2 percent assessment rate), indicating a value for the motel of $1,060,000. The capitalization rate of 9.5 percent, although not built up from a separate analysis of rates of return demanded, recapture of investment, and other factors, was supported by evidence of sales of similar properties in the area.

The third approach to value used by Mr. Nichols was the market approach. Five relatively current sales of motels in the area indicated that the selling price per unit ranged from $6,250 to $12,500. Judging a value per unit of $8,900 to be reasonable in the circumstances, and multiplying that unit value by the 110 units in the motel, a value of $979,000 was indicated. A second approach used was to analyze the selling price by use of a gross rent multiplier (GRM. The GRM is the selling price of a facility divided by its gross rental receipts. The five sales indicated a GRM range of from 2.86 to 3.50. Using a GRM of 3 and multiplying it by estimated gross rents from the facility of $349,000,

a value of $1,047,000 was indicated. Placing more reliance on the GRM analysis, Mr. Nichols felt the data indicated a value for the motel of $1,000,000. To this figure, $104,000 was added to represent the value of the restaurant bar, for a total estimate of value of $1,104,000.

In summary, Mr. Nichols found the indicated values under the various approaches to be as follows:

| Cost | Income | Market |
|------|--------|--------|
| $1,209,300 | $1,060,000 | $1,104,000 |

There is no need to make an exhaustive analysis of the many different considerations employed by Mr. Nichols in correlating these indicated values of the property. After carefully scrutininzing his report and testimony at trial, the court is satisfied that it represents a well-reasoned approach to valuing the property and constitutes the preponderance of the evidence. Accordingly, the defendant's Order No. VL 76-19, which determined a value for the subject property of $1,000,000, as of January 1, 1975, is affirmed.